CHARLES T. YERKES AND OTHERS, RESPONDENTS, *v.* SAMUEL N. SALOMON, APPELLANT.

*Statute against betting and gaming — contract for sale of stock — when void under.*

Where a contract is made for the delivery or acceptance of stock at a future day, at a price named, and neither party at the time of the making of the contract intends to deliver or accept the shares, but merely to pay the differences according to the rise and fall of the market, the contract is void under the statute against betting and gaming.

In this action, brought upon a contract for the delivery of stock at a future day the plaintiff was asked whether, at the time of making the contract, he intended to tender or call for the stock or merely to settle for the differences. *Held,* that the question was proper as tending to show the intent of the plaintiff in making the contract, and that it was error to exclude the same.

APPEAL from a judgment in favor of the plaintiffs, entered by direction of the justice at the Circuit.

The defendant made and, for a valuable consideration, delivered to the plaintiffs three contracts. By the first he agreed that the bearer might deliver to him, at any time within sixty days, 500 shares of Lake Shore Railroad Company, at sixty-six per cent, on one day's notice; the defendant to have all intervening dividends or extra dividends. By the second, he agreed that the bearer might, at any time within sixty days, call on him for 200 shares of the stock of the Pacific Mail Steamship Company, at thirty-seven per cent; or, at his option, might deliver the same to him at the same price, within the same time, at one day's notice; all dividends to go with the stock in either case.

The third contract was like the second, except that it was for 500 shares of the Lake Shore Railroad Company, at sixty-five per cent.

While these contracts were running, the defendant became insolvent; and on being notified by the plaintiff that he intended to

deliver to him the stocks, said that he had failed and could not take them; and it was then agreed between them that the one day's notice be waived, and that the contracts be settled on the market rate of that day; and a memorandum to this effect was indorsed on the contracts signed by the defendant. A few days after, the plaintiffs presented an account made up in accordance with this settlement, and defendant said it was right, and promised to pay it.

These facts having been proved by the plaintiffs, the defendant moved to dismiss the complaint: First, on the ground that the contracts were void under the statute against betting and gaming; second, that no corporations or stock, referred to in the contracts, were shown to exist; and third, that if such were shown, it was not shown that they were corporations incorporated under the laws of the United States or of any of the States.

The plaintiffs then put in further testimony as to the last point, and the motion to dismiss was renewed, and overruled, and the defendant excepted.

The defendant introduced no evidence.

The court ordered a verdict for plaintiffs, and defendant excepted.

Upon cross-examination of the plaintiff, he was asked whether, at the date of the contracts, he had the stocks referred to in the contracts. This was objected to as immaterial and excluded, to which defendant excepted. Plaintiff was also asked if at the time the contracts were made, he intended to tender or call for the stocks, or merely to settle for the differences. This was also excluded and defendant excepted.

Plaintiff was also asked if, at the time the contracts were made, he had the stock, or had made an offer to deliver it, or given notice that he would deliver it on that day or the next. This was excluded and defendant excepted.

The plaintiff was also asked whether at the time he wrote the indorsements on the contracts, and the defendant signed them, he was not to receive the difference between the price as mentioned in the contract, and the price as written on the back. This was objected to and excluded under defendants' exception.

The answer admitted the making of the contracts, but alleged that they were illegal and void as wagers, and in contravention of the statute against gaming and betting.

*John E. Develin,* for the appellant.

*Wm. G. Choate,* for the respondents.

BRADY, J.:

The contracts were not assailable as in contravention of law because, the plaintiff assuming such to be the fact had not at the time they were made the certificate of stock in his possession. The act of 1858, chapter 134 so declares, and therefore the question asked one of the plaintiffs whether, at the date of the contracts, he had the stocks referred to, was properly excluded; and so the exclusion of a kindred question was correctly ruled upon. The plaintiff examined was, however, asked the following question: " Was it your intention at the time these contracts, or either of them, were made, to tender or call for the stock, or merely to settle upon the difference?" and on objection it was excluded. The defense interposed, as we have seen, was that the contracts were wagers, and if it was the intention of the parties to settle the difference, as they subsequently did, and not to deliver or accept the stock, the defense would be established on the authorities. The statute declares that all stakes, etc., made to depend upon any chance, casualty or unknown or contingent event whatever, shall be unlawful. And, further, that all contracts for or on account of any money or property, or thing in action so wagered, bet or staked, shall be void. The form of the contract does not decide the question, because it would not be difficult to make the contract relating to the bet apparently lawful, while the intent with which it was entered into was to avoid or evade the statute. It is not the form in which the trick or device is presented, but the intent with which it is planned. When the question was asked, therefore, as to the intent, the subject was opened and the inquiry was pertinent. The authorities are abundant upon the proposition that if neither party intended to deliver or accept the shares, but merely to pay differences according to rise or fall of the market, the contract is for gaming. (*Grizewood* v. *Blaine,* 73 Eng. Com. Law, 525; *Brua's Appeal,* 55 Penn., 298; *Cooke* v. *Davis,* 53 N. Y., 318; *Cameron* v. *Durkheim,* 55 id., 425; *Peabody* v. *Speyers,* 56 id., 230; *Bigelow* v. *Benedict,* 16 N. Y. S. C. R., 429; *Story* v. *Salomons,* Com.

Pleas, MS. opin., VAN HOESEN, J.) The intent of the plaintiffs was one step in the defense, and when the attempt to prove it was rejected, the defendant secured the advantage of an exception. In *Cassard* v. *Hinman* (6 Bosw., 14) the question asked was, " at the time of the making the writings between you and Cassan, was any thing said by Nathan (the broker) as to the performance by receipt and delivery of pork, or the settlement by payment and receipt of differences, and if so, what ? " The question was excluded, and it was held to have been erroneously ruled upon. The inquiry was held relevant to the defense, which was substantially that the contract was a wager. The ruling considered demands, therefore, that a new trial be granted.

Ordered accordingly, with costs to abide the event.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.